DISTRICT COURT, BOULDER COUNTY, COLORADO
Court Address:
Boulder County Justice Center
1777 Sixth Street
Boulder, Colorado 80306

DATE FILED: December 10, 2019 3:48 PM
FILING ID: 545A4704B9D29
CASE NUMBER: 2019CV31194

**TRINA BARR,**

**Plaintiff**

**vs.**

**AESTHETIC MANAGEMENT PARTNERS, INC.** a Tennessee Corporation.

**Defendant**

☐ **COURT USE ONLY** ☐

_____

Case Number:

Div.:                    Ctrm.:

Attorneys for Plaintiff

Name: Elkus & Sisson, P.C
         7100 E. Belleview Suite 101
         Greenwood Village, Colorado 80111

Phone No.:     303-567-7981

Atty. Reg. #:     Reid J. Elkus, #32516
                        Katherine Sheely, #52182

## COMPLAINT AND JURY DEMAND

COMES NOW, the Plaintiff, Trina Barr, by and through her undersigned counsel, Elkus & Sisson, P.C., and hereby files this Complaint and Jury Demand.

1

**PARTIES AND VENUE**

1.      Plaintiff Trina Barr (or Ms. Barr) is an individual that resides at 6991 Jay Rd, Boulder, CO 80301.

2.      Defendant Aesthetic Management Partners, Inc., is a Tennessee Corporation that is doing business in the State of Colorado.  The principal office of the Defendant is located at 40 Bainbridge CV., Arlington, TN 38002.

3.      At all times relevant, that contract and ensuing conduct giving rise to this action occurred in Boulder County, State of Colorado.  As such, venue is proper pursuant to C.R.C.P. Rule 98(c).

**GENERAL ALLEGATIONS**

4.      Aesthetic Management Partners, Inc. ("AMP") advertises that it is a business accelerator for leading aesthetics manufacturers.  According to AMP, it provides a comprehensive ecosystem of business support including sales, engineering, network of physicians, branding, marketing, clinical and customer service to enhance the reach and growth of companies in the aesthetics industry.

5.      Ms. Barr holds a Bachelor of Science degree from Texas A&M University.

6.      Ms. Barr has worked in the field of medical aesthetics since 2012.

7.      Based on her vast experience in the medical field of aesthetics and recognizing her abilities in this specialized area of medicine, AMP entered into an employment agreement with Ms. Barr.

8.      AMP and Ms. Barr entered into the Employment Agreement on June 21, 2018.

9.      Under the Employment Agreement, AMP agreed to employ Ms. Barr as Vice President of Product Development and Clinical Integration.

10.      In her position as Vice President, Ms. Barr agreed to use her relationships, experience, knowledge of the field and overall business acumen to identify and source new technologies (including protocols and combinations of such technologies) for AMP.

11.      In addition to identifying new technologies, Ms. Barr further agreed to work directly with AMP's OEM manufacturers and/or supplies to identify, develop or design future products

for AMP.

12.     As set forth in the Employment Agreement, AMP agreed to pay Ms. Barr a salary as well as commission.

13.     Regarding the commission structure, AMP agreed to pay Ms. Barr a commission after an end-user customer issues a valid purchase order and the product is then invoiced to AMP. Commissions earned "shall be paid by AMP" to Ms. Barr monthly.

14.     The commissions are to be paid to Ms. Barr by the last business day of the calendar month following the month within which the purchase order was received.

15.     In calendar year 2018, Ms. Barr was receiving commissions of approximately 50% of AMP product that was sold through Experiential Learning Center ("ELC").

16.     Upon information and belief, despite selling AMP product as required under the Employment Agreement, Ms. Barr was not receiving her full commission for the 2018 calendar year.

17.     Likewise, upon information and belief, despite selling AMP product as required under the Employment Agreement, Ms. Barr was also not receiving her full commission for the 2019 calendar year.

18.     In addition to commissions, Ms. Barr was also entitled to profit sharing.

19.     The June 21, 2018 Employment Agreement set forth the basis and criteria for Ms. Barr to receive equity in the form of shares of common stock of AMP.

20.     Initially, Ms. Barr would receive up to 2,000,000 shares of common stock with 500,000 shares vesting on January 1, 2019.  The remaining shares would vest on January 1st each year (2020, 2021 and 2022) for a total of 2,000,000 shares.

21.     In August, 2018, the Parties renegotiated Ms. Barr's equity in AMP.

22.     Upon information and belief, the Parties agreed that on or before October 1, 2018, 1,000,000 shares of common stock in AMP shall vest to Ms. Barr with an option price of .025 per share.

23.     On or about September 17, 2018, the Parties executed a revised Employment Agreement ("Revised Agreement").  The Revised Agreement was to set forth the understanding and agreement of the revised equity Ms. Barr was to earn throughout her tenure with AMP.

24.     The equity plan in the Revised Agreement incorrectly set forth the vesting amount that Ms. Barr and AMP agreed upon in August, 2018.  Evidencing the scrivener's error is that the Revised Agreement had Ms. Barr receiving less shares than previously agreed upon in the June 21, 2018 Employment Agreement.

25.     Despite the scrivener's error in the Revised Agreement, on or about August 3, 2018, AMP advised Ms. Barr that 1,000,000 shares of common stock in AMP shall vest to Ms. Barr on or before October 1, 2018.

26.     In addition to commissions and profit sharing, AMP also agreed to reimburse Ms. Barr's expenses that were customary and reasonably incurred in connection with the performance of her duties at the company.

24.     From October, 2018 to April, 2019, AMP was being invoiced for Ms. Barr's expenses via the ELC Advances Clinical Integration Training and ELC Technologies Immersion.  The total expenses incurred on behalf of AMP, which expenses were paid by Ms. Barr, totals $216,551.00.

25.     Out of the $215,551.00, AMP reimbursed Ms. Barr approximately $56,057.00.  AMP still owes Ms. Barr approximately $160,494.00.

26.     On April 18, 2019, AMP terminated Ms. Barr's employment.

27.     At that time of Ms. Barr's termination, she was entitled to receive her earned commissions, her expenses and earned and vested profit sharing.

28.     As of the date of this complaint, AMP has not paid Ms. Barr her earned commissions, the unpaid expenses and the vested profit sharing.

29.     On June 12, 2019, and on behalf of Ms. Barr, Mr. Dean Herms of Herms & Herrera, LLC sent to AMP a demand for wages and compensation under C.R.S. §8-4-109.

30.     Despite Mr. Herms demand, and as of the date of this Complaint, AMP has not paid Ms. Barr her full wages and compensation which were earned, vested and determinable at the time of her discharge.


## CLAIM FOR RELIEF
*(Wages Claim Act – C.R.S. §8-4-109)*

31.     Plaintiff incorporates by reference all other paragraphs contained in this Complaint

and Jury Demand.

32.     At the time of the termination of her employment, Ms. Barr was entitled to receive earned commissions as well as being paid her expenses and vested profit sharing.

33.     Pursuant to C.R.S. § 8-4-109, when an interruption in the employer-employee relationship by volition of the employer occurs, the wages or compensation for labor or services earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately.

34.     The commissions, expenses and profit sharing were compensation due to Ms. Barr that was earned, vested, and determinable at the time of her termination.

35.     On June 12, 2019, and on behalf of Ms. Barr, Mr. Dean Herms of Herms & Herrera, LLC sent to AMP a demand for wages and compensation under C.R.S. §8-4-109.

36.     To date, AMP has refused to provide payment of the above monies which were earned, vested, and determinable. As such, AMP is subject to the penalties outlined in C.R.S. § 8-4-109.

WHEREFORE, the Plaintiff prays for Judgment as follows:

A.     Payment of monies earned, vested, and determinable; penalties and damages allowable on the amount pursuant to C.R.S. §8-4-109; and reasonable attorney's fees and costs;

B.     Such other and further relief as the court deems proper in the circumstances including but not limited to attorneys' fees and costs.

**THE PLAINTIFF HEREBY DEMANDS A JURY FOR THOSE CLAIMS WHICH ARE TRIABLE.**

Respectfully submitted this 10th day of December, 2019.

**ELKUS & SISSON, P.C.**

5

/s/ Reid J. Elkus
Reid J. Elkus,
Lucas Lorenz
Kathryn Sheely
Attorneys for Plaintiff
ELKUS & SISSON, P.C.
7100 E. Belleview Suite #101
Greenwood Village, Colorado 80111
(303) 567-7981 (phone)
(303) 431-3753 (fax)